IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**ELISE T. HEBERT**                                                                      **PLAINTIFF**

**VERSUS**                                                             **CIVIL ACTION NO.:** 1:19cv175-SA-DAS
                                                                                 **JURY TRIAL DEMANDED**

**CHICKASAW COUNTY, MISSISSIPPI**                                    **DEFENDANT**

## **COMPLAINT**

Plaintiff ELISE T. HEBERT, through her undersigned attorneys, Johnson and Bennett, PLLC, brings this Complaint against Defendant CHICKASAW COUNTY and alleges as follows:

1. This is an action under Title VII of the Civil Rights Act of 1964 (Title VII) and the 14th Amendment through 42 U.S.C. § 1983 to correct unlawful employment practices on the bases of sex, unequal protection, and retaliation, and to provide appropriate relief to Plaintiff, Elise Hebert, who was adversely affected by such practices. Specifically, Plaintiff alleges that Defendant Chickasaw County, Mississippi (County) discriminated against her by subjecting Ms. Hebert to a hostile work environment because of her gender identity (i.e., sex) and/or because of her failure to conform to Defendant's sex-based preferences, expectations, or stereotypes. Plaintiff further alleges that Defendant discriminated against Ms. Hebert in violation of Title VII and the 14th Amendment when it terminated Ms. Hebert in retaliation for complaining about the harassment and because of gender identity. Ms. Hebert also asserts a claim for a violation of her 1st Amendment right to be free to complain about matters of public concern without reprisal.

2. Plaintiff, ELISE HEBERT, is an adult resident citizen of Hamilton County, Tennessee.

3. Defendant CHICKASAW COUNTY, MISSISSIPPI is a political subdivision of the State of Mississippi, and may be served with process by service upon its Chancery Clerk, Tiffany Lovvorn, 1 Pinson SQ, Houston, Mississippi 38851-2218. At all relevant times, Defendant acted under color of state of law. The Defendant is an employer within the meaning of Title VII.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and civil rights jurisdiction under 28 U.S.C. § 1343, for a cause of action arising under Title VII of the Civil Rights Act of 1964 and the First and Fourteenth Amendments to the United States Constitution. This action is authorized by 42 U.S.C. § 1983. This Court has authority to award costs and attorney fees under 42 U.S.C. § 1988.

5. Venue is proper in this action pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiff's claims occurred in Chickasaw County, Mississippi, which is within the Northern District of Mississippi, Aberdeen Division.

6. At all times relevant to this matter, Ms. Hebert was employed and then terminated by Defendant through the Sheriff's Department, where Sheriff James Meyers is the policy maker.

7. Ms. Hebert was hired to work at the Chickasaw County Regional Correctional Facility, which was directly under the purview of Sheriff Meyers.

8. At all times relevant to this matter, Warden Brand Huffman reported directly to Sheriff Meyers.

9. Several positions reported directly to Warden Brand, including Nurse, Cindy Cockell; Office/PREA Manager, Amanda Huffman, who is also Warden Brand's wife; Chief of Security, George Dallas; and Maintenance, David Griffin.

10. Ms. Hebert is a transgender woman whose gender identity (female) is different from the sex assigned to her at birth (male).

11. Ms. Hebert began her employment with Defendant on September 6, 2016, as a Part-time Correctional Officer (CO).

12. On October 12, 2016, Ms. Hebert's employee status changed from Part-time Correctional Officer to Full-Time Correctional Officer.

13. Ms. Hebert worked in the corrections field for six years before she returned to Mississippi to take care of her mother, attaining the rank of Captain/Shift Lead.

14. Ms. Hebert had a model career in corrections before going to work for the County.

15. After Ms. Hebert was employed by the County, Warden Brand Huffman approached Ms. Herbert demanding to know who Elijah Hebert was.

16. Ms. Hebert advised Warden Huffman that she and Elijah were the same person.

17. Warden Huffman pulled Ms. Hebert into an office where Chief of Security, George Dallas was present, leaving Plaintiff as the only female in the room.

18. Being pulled into an office with only male superiors and being questioned on her gender made Ms. Hebert very uncomfortable, embarrassed, and offended.

19. Despite her feelings of discomfort and embarrassment, Ms. Hebert informed the Warden that she was a transgender female and she did not want anyone else to know this information because Ms. Hebert felt that not all people would be accepting of her transgender status, creating the possibility of an unsafe environment.

20. Despite Ms. Hebert's request that transgender status be kept confidential, it soon became apparent to Ms. Hebert that her transgender status was known and discussed by co-workers and even some inmates.

21. The sex-based harassment that Ms. Hebert was subjected to was severe or pervasive in that it involved derogatory and humiliating statements, intentionally denied Ms. Hebert the fundamental acceptance of her personal identity, was perpetuated with the intent to belittle and

ridicule Ms. Hebert, occurred frequently, and involved Defendant's Supervisory personnel, including but not limited to Sheriff Meyers and Warden Huffman.

22. Male officers began to write statements about interactions with Ms. Hebert, accusing her of being argumentative, screaming, hollering, belittling male officers in front of other male officers, lacking communication skills, and talking to other male officers in a disrespectful manner.

23. Ms. Hebert did not fit the typical female stereotype and behavior that the male officers and superiors expected.

24. Throughout her employment with the County, Ms. Hebert wrote statements regarding the Warden's refusal to follow policy as set forth in Defendant's handbook, raising concerns for the safety of the Defendant's employees and the inmates in the correctional facility.

25. Ms. Hebert's concerns regarding the failure of the Warden and Sheriff to adhere to policy that was in place for the protection of the employees and inmates were of a matter of public concern.

26. Ms. Hebert never received a response to her concerns, causing her to further feel ostracized and isolated.

27. Ms. Hebert's written statements regarding policy violations and differences in treatment were ignored, while she was subjected to reprimands and warnings regarding incidents for which other officers did not receive any discipline.

28. Ms. Hebert complained to Chief Dallas, Warden Huffman, and Sheriff Meyers at various times during her tenure with the Defendant about the unequal treatment and discrimination and retaliation.

29. Ms. Hebert was also having problems with receiving her paycheck when it was due even though the other officers received their pay on time.

30. Ms. Hebert repeatedly had to complain about not getting paid, including complaints

in April and July.

31. Ms. Hebert did not receive her paycheck on July 1, 2017, the scheduled pay day, and she was unable to drive to work because she did not have gas money and she expected to be paid on time.

32. Ms. Hebert notified Lieutenant Fowler that she did not get paid and could not get to work.

33. Ms. Hebert wrote Sheriff Meyers on July 1, 2017, to notify him that she did not get paid and could not get to work.

34. Ms. Hebert cited to Defendant's handbook requesting relief to help her get to work and asserted that she was being subjected to unlawful discrimination, retaliation, and subjected to a hostile work environment.

35. Ms. Hebert did not receive any relief.

36. Ms. Hebert was written up on July 5, 2017, for missing work on July 1, 2017, and for not following the Chain of Command when she complained to the Sheriff about not being paid and not being able to get to work.

37. Ms. Hebert denied the allegations contained in the July 5, 2017, write up.

38. Ms. Hebert wrote the Warden on July 5, 2017, raising a number of incidents that had been ongoing, but were not being addressed, while she was being written up for her inability to make it to work due to not receiving her paycheck on time.

39. Ms. Hebert continued to raise the issues of workplace discrimination and harassment and reiterated her desire that everyone be treated equally.

40. Ms. Hebert was written up on July 12, 2017, for screaming and for not acting appropriately for her position.

41. Ms. Hebert denied the allegations in the write up.

42. Ms. Hebert's actions were no different than the male officers and the female officers, yet Ms. Hebert was subjected to discipline other officers were not disciplined for due to her transgender status.

43. The other officers who wrote statements to harass and discriminated against Ms. Hebert did not write such statements about their fellow officers when said officers did the same things that Ms. Hebert did.

44. On July 28, 2017, Defendant terminated Ms. Hebert.

45. The effect of the practices complained of above has been to deprive Hebert of equal employment opportunities and otherwise adversely affect her status as an employee because of Hebert's gender identity (i.e., sex) and/or Hebert's failure to conform to Defendant's sex-based preferences, expectations, or stereotypes.

46. The Defendant terminated Ms. Hebert due to her transgender status and subjected her to a hostile work environment based on her gender identity (i.e., sex) and/or her failure to conform to Defendant's sex-based preferences, expectations, or stereotypes.

47. Defendant's conduct lacked any rational relationship to a legitimate state interest, violating Ms. Hebert's equal protection rights under the Fourteenth Amendment.

48. Defendant's conduct lacked any rational relationship to a legitimate state interest violating Ms. Hebert's rights under the First Amendment.

49. Pursuant to 42 U.S.C. § 1983, Defendant is liable for depriving Ms. Hebert of her First Amendment right to speak on matters of public concern and her Fourteenth Amendment right to equal protection.

50. The actions of the Defendant described in this Complaint constitute willful and intentional violations of Ms. Hebert's rights under Title VII of the Civil Rights Act and the First and Fourteenth Amendments of the United States Constitution which caused Ms. Hebert to suffer

damages and entitle Plaintiff to the recovery of damages.

51.     Ms. Hebert suffered damages as a result of Defendant's unlawful sexual harassment and retaliatory actions, including emotional distress, post-traumatic stress disorder, past and future lost wages and benefits, loss of enjoyment of life and the costs of bringing this action.

52.     Plaintiff's Charge of Discrimination with the Equal Employment Opportunity Commission was filed on August 3, 2017. Exhibit A, Charges of Discrimination.

53.     On July 9, 2019, the EEOC issued Ms. Hebert a Dismissal and Notice of Suit Rights. Exhibit B, Dismissal and Notice of Suit Rights (RTS).

54.     Plaintiff timely files this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief to be determined by a jury at a trial of this matter:

(1)     Back wages and reinstatement or front pay in lieu of reinstatement;

(2)     Compensatory damages;

(3)     Reasonable costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988.

(4)     Any further relief that the Court deems just and proper.

This the 1st day of October, 2019.

Respectfully submitted,
ELISE HEBERT

BY: */s/ **Kristy L. Bennett***
Kristy L. Bennett BPR #99525
Tressa V. Johnson BPR #104892
JOHNSON AND BENNETT, PLLC
1331 Union Avenue, Suite 1226
Memphis, TN 38104
(901) 402-6601 (direct)
(901) 462-8629 (fax)
kristy@myjbfirm.com